UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELE D. BUTTS, )
) CASE NO. C11-1556-TSZ-MAT
    Plaintiff, )
)
    v. ) REPORT AND RECOMMENDATION
) RE: SOCIAL SECURITY DISABILITY
MICHAEL J. ASTRUE, Commissioner ) APPEAL
of Social Security, )
)
    Defendant. )
_____ )

Plaintiff Michele D. Butts proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for an award of benefits.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1962.[1] She obtained her GED and previously worked in data entry, performed the duties of a bookkeeper and secretary, and has past experience as a nurse's aide. (AR 112-14, 220.)

Plaintiff filed applications for DIB and SSI in April and July 2008 respectively, alleging disability since April 30, 2007. (205-09.) Her applications were denied initially and on reconsideration, and she timely requested a hearing.

On June 7, 2010, ALJ Gary J. Suttles held a hearing, taking testimony from plaintiff, a medical expert, plaintiff's mother, and a vocational expert. (AR 42-121.) On June 23, 2010, the ALJ issued a decision finding plaintiff not disabled. (AR 26-38.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on July 1, 2011 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's fibromyalgia, cervical degenerative disc disease, degenerative joint disease of the right knee, heart disease with pacemaker implantation, depression, anxiety, somatization disorder, and personality disorder. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff capable of performing light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) (lift and carry twenty pounds occasionally and ten pounds frequently, sit, stand, and/or walk six hours in an eight hour day, with ordinary work breaks, i.e. morning, afternoon, and lunch breaks), but limited her to walking for only four hours in an eight hour day and requiring the need to shift at will between sitting and standing. He further limited plaintiff to only occasional pushing with her lower extremities; occasional overhead reaching; unable to run or climb ladders, ropes, or scaffolds; only occasional bending, stooping, crouching, crawling, balancing, twisting, squatting, and stair climbing; and having only limited exposure to excessive cold, heights, dangerous machinery, and uneven surfaces. The ALJ also concluded that, mentally, plaintiff is capable of getting along with others, understanding simple instructions, concentrating and performing simple tasks, and responding and adapting to workplace changes and supervision, but in a limited public/employee contact setting. With that assessment, the ALJ found plaintiff unable to perform any past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Considering the Medical-Vocational Guidelines and with the assistance of the vocational expert, the ALJ found plaintiff capable of performing other jobs, such as work as a photo copy machine operator, small parts assembler, and office helper.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues[2] the ALJ erred in his consideration of the medical evidence, the lay testimony, her credibility, and in proffering a deficient hypothetical to the vocational expert. She requests remand for an award of benefits. The Commissioner concedes all of these reversible errors, but disagrees with the request for an award of benefits, arguing the matter should be remanded for further administrative proceedings. The Commissioner also notes that

---

2 Plaintiff's Opening Brief contains a lengthy statement of facts and procedural history, totaling three quarters of the brief. The Court has full access to the administrative record and all the hearing exhibits. A lengthy summary of the record by either party serves no useful function, and violates this Court's scheduling order. (Dkt. 10 at 2 ("**The parties shall not include a lengthy recitation of background facts or medical evidence. Rather, a discussion of the relevant facts should be included in the context of specific assignments of error**.") (emphasis in original).)

plaintiff is ineligible for SSI for any month including and preceding July 2008, the month she filed her SSI application, 20 C.F.R. §§ 416.330, 416.335, and ineligible for DIB for any month preceding September 2006, twelve months before her application, 20 C.F.R. § 404.621.

The Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77. For the reasons described below, this matter should be remanded for an award of benefits.

The ALJ, as conceded by the Commissioner, failed to adequately evaluate the medical record, the lay witness evidence, and plaintiff's credibility, thereby implicating the RFC assessment, the hypothetical proffered to the vocational expert, and the resulting step five decision. The insufficiently evaluated medical record includes supportive opinions from treating physician Dr. Daniel Conrad (AR 623-25), examining physician Dr. Daniel Neims (AR 612-21), testifying medical expert Dr. Kenneth Asher (AR 89-112), and examining psychiatrist Dr. James Hughes (AR 815-20), the latter of which was considered only by the Appeals Council. Plaintiff argues that, if credited as true, the opinions of these physicians support an award of benefits.

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester v. Chater*, 81 F.3d 821, 830-34 (9th Cir. 1996) (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See*, *e.g.*, *Schneider v. Commissioner of Social Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding clearly required).

Courts retain flexibility in applying this "'crediting as true' theory." *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). Therefore, applying the "credit-as-true" rule "is not mandatory when, even if the evidence at issue is credited, there are 'outstanding issues that must be resolved before a proper disability determination can be made.'" *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)). *See also Barbato v. Commissioner of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) ("In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant."; remanding for further proceedings where the ALJ made a good faith error, in that some of his stated reasons for

rejecting a physician's opinion were legally insufficient). On the other hand:

> [T]he district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (cited sources omitted).

In this case, Dr. Neims assessed a number of marked limitations in plaintiff's abilities: performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruption from psychological symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers; setting realistic goals and making plans independently of others; and traveling in unfamiliar places and using public transportation. (AR 621.) A "marked limitation" as considered by Dr. Neims meant: "Generally able to perform the designated task or function, but with noticeable difficulty [(meaning the individual is distracted from the job activities or the quality of performance would be likely to attract negative attention from a supervisor)] affecting function 2-4 hours in an average workday or 10-20 hours in an average workweek." (AR 620.)

Also, Dr. Asher testified to his opinion that plaintiff would be markedly limited, meaning about "a third of the time, roughly 10 days a month, more or less", in her activities of daily living and with respect to concentration persistence, and pace. (AR 110.) He added: "And she would not be able to perform – her concentration, persistence, and pace in a broad

sense, her cognitive performance, would be – she just wouldn't be able to function." (*Id.*)[3]

The vocational expert testified that a person missing two or more days a month over a three month period would not be able to sustain employment. (AR 118.) He further testified that an individual would not be able to sustain employment if he or she, for two hours in an average day or ten hours in an average week, had difficulties in performing scheduled activities, maintaining regular attendance, and being punctual within customary tolerances. (*Id.*) Likewise, an individual who had difficulty accepting instructions and responding appropriately to criticism and supervisors, two hours a day or ten hours a week, would not be able to sustain employment. (AR 118-19.) Accordingly, as argued by plaintiff, the opinions of Dr. Neims and Dr. Asher, if credited as true, support a finding of disability at step five when considered in conjunction with the testimony of the vocational expert.

None of the Commissioner's arguments in opposition to an award of benefits are persuasive. The Commissioner observes that Dr. Neims, after assessing marked limitations in the check-box portion of the form completed, did not, in the second portion of the form, provide any "detailed explanation of the degree of limitation for each category, as well as any other assessment information" deemed appropriate. (AR 620-21.) However, the Commissioner entirely ignores the fact that, while leaving blank the small portion of the form provided for narrative explanation, Dr. Neims attached a seven page report containing detailed descriptions of plaintiff's medical and other history, the mental status evaluation conducted, testing results

---

3 The ALJ assigned "little weight" to Dr. Asher's opinions because "[t]hough Dr. Asher has testified as an impartial medical expert at Social Security hearings for more than ten years, he was paid to appear and testify at this hearing on the claimant's behalf, without ever having examined the claimant." (AR 31.) The Commissioner does not argue that Dr. Asher's opinion was entitled to less weight because he was, in this particular case, hired by plaintiff, rather than the Commissioner.

REPORT AND RECOMMENDATION
PAGE -8

and his interpretation, diagnostic impressions, and his conclusions and recommendations. (AR 612-18.) Dr. Neims described plaintiff's anxious, guarded, and passive aggressive presentation, and her marked and moderate-to-marked testing scores for depression and anxiety. (AR 612-17.) He provided a detailed explanation of his conclusions, including, *inter alia*, that plaintiff was "clearly focused on somatic issues[,]" that a pain disorder diagnosis reflected the "impact of both somatic and psychological components of her presenting issues[]" and suggested "that if physiological aspects of pain concerns surpass those predicted by her providers that a psychological component may well be present[,]" and that plaintiff was "seen as disabled from sustained gainful employment for the foreseeable 12 months or longer, with chief difficulties centering in areas of social factors and adaptation." (AR 617-18.) Given the existence of this detailed explanation, the Commissioner provides no basis for further evaluation of the opinions of Dr. Neims on remand.

Nor does the Commissioner otherwise support the averred need for further consideration of the medical record. The Commissioner states that, while opining as to plaintiff's disability in November 2009, Dr. Conrad did not explain how and why the objective medical evidence supported such a conclusion. However, Dr. Conrad did provide an explanation for his opinion, stating:

> It is my opinion that Ms. Butts honestly reports her subjective symptoms for treatment purposes. She has one of the more severe cases of fibromyalgia syndrome that I have seen in my practice, and she does have significant limitations associated with that condition. My assessment of the severity of her fibromyalgia is based not on the severity of her objective findings, but on her well established diagnosis and her reported symptoms and limitations. In addition, it is my opinion that there is a psychological component of her pain complaints and other symptoms. It is difficult to separate out the symptoms that are caused by the fibromyalgia syndrome and the symptoms related to

psychological factors, but it is clear that psychological factors increase her physical symptoms, including her pain and fatigue, and contribute to her poor stress tolerance. Ms. Butts has . . . little insight into the relationship of psychological factors on her physical symptoms, and as a result does not appreciate the possible utility of counseling or other non-medical psychiatric treatment. Unless this changes, it is probable that her symptoms will continue to be disabling to her.

(AR 624-25.) Dr. Conrad also described his three plus years of treating plaintiff, including her fibromyalgia diagnosis both prior to his treatment and by rheumatologist Dr. Anshul Pandhi, and plaintiff's use of various medications. (AR 623-24.)

Similarly, and contrary to the Commissioner's suggestion, Dr. Asher explained the basis for his opinions, pointing to his review of the medical record, including the extensive treatment records from Group Health Cooperative, the evaluation by Dr. Neims,[4] the November 2009 statement from Dr. Conrad, Dr. Pandhi's evaluation, and various other exhibits in the record. (AR 90-112.) Dr. Asher also noted his review of reports completed by plaintiff and her mother, and his consideration of plaintiff's testimony. (*Id.*)

As argued by plaintiff, the Commissioner appears to place undue emphasis on the need for objective evidence of plaintiff's fibromyalgia. *Benecke*, 379 F.3d at 594 (finding ALJ erred by "'effectively requiring "objective" evidence for a disease that eludes such measurement.'") (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing and remanding for an award of benefits where the claimant was disabled by fibromyalgia)). Fibromyalgia symptoms "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Id.* at 589-90. Fibromyalgia "is diagnosed

---

4 Dr. Asher mistakenly referred to Dr. Neims as Dr. "Nyes." (*See*, *e.g.*, AR 100.)

entirely on the basis of patients' reports of pain and other symptoms[,]" and "to date there are no laboratory tests to confirm the diagnosis." *Id*. at 590. The "rule of thumb" for diagnosing fibromyalgia is that a patient have pain in at least eleven out of eighteen "tender spots[,]" fixed locations on the body "that when pressed firmly cause the patient to flinch." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

The record in this case supports both plaintiff's diagnosis of fibromyalgia and her long and consistent reporting of her fibromyalgia symptoms. (*See*, *e.g.*, AR 549-50 (Dr. Pandhi noted twelve out of eighteen tender points on examination) and AR 397-402, 498, 519, 527, 537-38, 543-45, 557-59, 569-71, 634, 638, 697, 705, 713-20, 732-41 (examples of plaintiff's reports of her fibromyalgia-related symptoms to Dr. Conrad and other providers at Group Health Cooperative).) *See also Benecke*, 379 F.3d at 594 (noting every rheumatologist who treated the claimant diagnosed her with fibromyalgia and that the claimant "consistently reported severe fibromyalgia symptoms both before and after diagnosis"). The record also contains, as conceded by the Commissioner, inadequately evaluated testimony from both plaintiff and her lay witness (AR 45-88, 232-39), as well as a report from Dr. Hughes diagnosing plaintiff with a pain disorder and assessing her as chronically mentally ill (AR 815-20).

Additionally, while the Commissioner accurately notes that opinions as to disability are reserved to the Commissioner, this fact does not undermine the validity of the opinions of the treating and examining physicians; instead, such opinions are not "entitled to controlling weight or special significance." Social Security Ruling (SSR) 96-5p. "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the

adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id*. In this case, as discussed above, the record contains sufficient support for the opinions proffered by Drs. Neims, Conrad, and Asher.

Finally, it should be noted that the only contrary medical opinions in the record came from a reviewing State agency medical expert (AR 428 (affirming report by non-medical personnel at AR 374-81)) and consultative examiner Dr. James Crew (AR 369-73). However, in addition to the fact that Dr. Crew had no medical records to review, he considered only plaintiff's physical complaints and found plaintiff capable of medium exertional level work, despite finding her to have sixteen out of eighteen tender points on testing for fibromyalgia. (AR 369-73.) Also, the opinions of non-examining physicians are generally entitled to less weight than treating or examining physicians, and "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830-31 (cited sources omitted).

In sum, the Commissioner does not establish any outstanding issues or other need for further consideration of plaintiff's claim on remand. Remand is not appropriate simply to allow the ALJ an opportunity to acquire information favorable to his position. *See generally Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988) ("In cases where there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony.")

The record in this case contains a significant amount of medical evidence and opinions as to plaintiff's impairments which the ALJ failed to sufficiently evaluate, including opinions which, if credited as true, support a finding of disability. As such, this matter should be remanded for an award of benefits.

## CONCLUSION

For the reasons set forth above, this matter should be REMANDED for an award of benefits.

DATED this 21st day of May, 2012.

Mary Alice Theiler
United States Magistrate Judge